1   **HALEY GUILIANO LLP**

2   JOSHUA V. VAN HOVEN (CSB NO. 262,815)
        E-Mail: joshua.vanhoven@hglaw.com
    WILLIAM J. ULRICH (CSB NO. 323,117)

3       E-Mail: william.ulrich@hglaw.com
    111 N. Market Street, Suite 900

4   San Jose, California 95113
    Telephone: 669.213.1050

5   Facsimile: 669.500.7375

6   Attorneys for Plaintiff
    Weiss Residential Research LLC

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10   WEISS RESIDENTIAL RESEARCH LLC, a Massachusetts Limited Liability Company | **Case No. 8:20-CV-00861** |
| 11   | **COMPLAINT** |
| 12             Plaintiff, | **1. BREACH OF CONTRACT** |
| 13        vs. | **2. VIOLATION OF DEFENSE OF TRADE SECRETS ACT** |
| 14   EXPERIAN INFORMATION SOLUTIONS, INC, an Ohio Corporation, and EXPERIAN SERVICES CORP., a Delaware Corporation | **3. VIOLATION OF CALIFORNIA UNIFORM TRADE SECRET ACT** |
| 15   | |
| 16   | **4. VIOLATION OF LANHAM ACT** |
| 17             Defendants. | |
| 18   | **5. VIOLATION OF CAL. BUS. & PROF. CODE SECTION 17200** |
| 19   | **JURY TRIAL DEMANDED** |

HG Haley · Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-1-

1    Plaintiff Weiss Residential Research, LLC, d/b/a Weiss Analytics

2    ("Weiss Analytics"), for its Complaint against Defendants Experian

3    Information Solutions, Inc. and Experian Services Corp. (collectively,

4    "Experian"), states and alleges as follows:

5                              **<u>INTRODUCTION</u>**

6           1.      This is an action for breach of contract, theft of trade secrets, unfair

7    trade practices, false advertising, and injunctive relief, all stemming from

8    Experian's wrongful acquisition and exploitation of Weiss Analytics' valuable

9    and confidential residential real estate data, analytics and know-how, and

10   Experian's continuing efforts to freeze out Weiss Analytics from the substantial

11   financial and reputational rewards of jointly developed technology that is crucial

12   to financial institutions' profitability, ability to provide safe and appropriate

13   mortgage loans to consumers, compliance with accounting standards and

14   banking regulations, and indeed, to the stability of our financial institutions and

15   system.

16          2.      Following the massive residential mortgage losses of the Great

17   Recession, the Financial Accounting Standards Board ("FASB") promulgated a

18   new forward-looking standard called Current Expected Credit Losses

19   ("CECL").  CECL initially went into effect for large financial institutions on

HG Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-2-

1    January 1, 2020, and will be phased in for smaller financial institutions over the

2    next few years.  Financial institutions have spent years developing their forward-

3    looking CECL methodologies, and many are now required to use CECL

4    methodologies to quantify credit losses.  The capabilities that were developed

5    for CECL are particularly advantageous for financial institutions during periods

6    of substantial uncertainty, such as the current COVID-19 pandemic.

7         3.    Experian collects, aggregates and analyzes personal and credit

8    account data from a variety of sources.  In 2018, Experian launched its Experian

9    Ascend Analytical Sandbox ("Sandbox") to business customers.  Sandbox

10   "enables instant access to up to 18 years of full file Experian credit data on 220

11   million consumers, commercial data, property data and other alternative data

12   sources, alongside your customer data."  Recognizing that many banks and

13   financial institutions would lack the technical or financial resources to comply

14   with CECL, Experian also began to explore a CECL compliance product.

15        4.    Weiss Analytics is the country's premier single-family residence

16   data analytics firm, with house-level historical price indexes, home price

17   forecasts, and home valuations for over 90 million US homes.  Prior to its work

18   with Weiss Analytics, Experian lacked house-level historical, current, and

19   predictive data and analytics for home values, and the know-how to incorporate

Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

1    such information into commercial products.  Experian's data sources painted an

2    incomplete credit picture.

3        5.      Allan Weiss is the founder and principal of Weiss Analytics.  He is

4    also the founder and former CEO of Case Shiller Weiss ("CSW") which first

5    commercialized home price indexes in the early 1990s.  CSW is the creator of

6    the S&P Case-Shiller Index.  Its methods have been adopted by OFHEO, the

7    conservator of Fannie Mae and Freddie Mac and many other government and

8    private financial institutions and organizations.

9        6.      During the ten-year period that Mr. Weiss led CSW, the indexes

10   were adopted by the major rating agencies at the time (S&P, Moody's Fitch and

11   Duff & Phelps) and published continuously by the Wall Street Journal and

12   published by many other national news outlets.  The Wall Street Journal also

13   published CSW's forecasts each quarter for several years.  The indexes are

14   traded on the Chicago Mercantile Exchange and have been used to settle billions

15   of dollars of swap contracts by Fannie Mae and other financial institutions.  Mr.

16   Weiss led the sale of CSW to Fiserv in 2002.

17       7.      Mr. Weiss is also an inventor, along with Nobel prize winner

18   Robert Shiller, on two patented structures known as Macro Securities, which

19   have been used to structure over $1 billion of equity securities for hedging home

H-G Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

price risk and oil price risk. Time Magazine awarded one of Mr. Weiss' inventions one of the best inventions of 2008.  Mr. Weiss is the inventor of six additional patents related to spreading home price risk between homeowners and equity investors and has co-authored peer-reviewed academic papers on homeowner price risk.

8.     Mr. Weiss founded Weiss Analytics in 2012 to produce metrics in response to the failings of previous indexes to warn of risks in the housing market.  Weiss Analytics' core innovations are price indexes and forecasts at the individual house level so as a market weakens, and the most vulnerable houses respond first, investors can see an early warning.  Weiss Analytics house-specific indexes and forecasts are used by private investors that manage over $50 billion in assets.

9.     Experian and Weiss Analytics entered into a series of agreements to explore a potential collaboration combining Weiss Analytics home value data and analytics with Experian consumer credit data, including for Sandbox home value data integration, a CECL mortgage offering, and a number of other related products.  These agreements prohibited Experian from disseminating or reverse engineering Weiss Analytics' confidential data and from launching products without agreements on allocation of ownership and revenue.

HG Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

-5-

COMPLAINT

10.     In early 2019, Experian began working with consultant Oliver Wyman to assist with the development of its CECL solution.  In order to induce Weiss Analytics to share its data and analytics with Oliver Wyman via Experian's Sandbox, Experian again confirmed that it would not launch any of the CECL product offerings without first finalizing terms for revenue and ownership share with Weiss Analytics.  Over the ensuing months, Weiss Analytics provided Experian directly, and Oliver Wyman via Sandbox, with access to its most confidential home value data and analytics.  Weiss Analytics also provided key insights on how to associate, integrate and analyze home value data with Experian's consumer credit data.

11.     After the integration was well underway, Experian began to freeze Weiss Analytics out of the product offerings.  On the one hand, Experian told key customers and industry players that product offerings it launched had access to Weiss Analytics' data.  On the other hand – and contrary to its agreements with Weiss Analytics – Experian now claims that it can ignore its contractual obligation for a revenue and ownership split of CECL mortgage, Sandbox mortgage analytics, and other products conceived or developed with Weiss Analytics.

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

1    12.    The parties' agreements categorically prohibit Experian from

2    launching these products.  In sum, Experian is wrongly launching products

3    based on Weiss Analytics trade secrets and exploiting Weiss Analytics'

4    commercial reputation, all while attempting to deprive Weiss Analytics of

5    financial benefits required by the parties' agreements.

6                                    **PARTIES**

7    13.    Weiss Analytics is a Limited Liability Company with its principal

8    place of business in Framingham, Massachusetts.

9    14.    Upon information and belief, Experian Information Solutions, Inc.

10   is an Ohio Corporation with its principal place of business in Costa Mesa,

11   California.

12   15.    Upon information and belief, Experian Services Corp. is a

13   Delaware Corporation with its principal place of business in Costa Mesa,

14   California.

15                         **JURISDICTION AND VENUE**

16   16.    This Court has subject matter jurisdiction over Weiss Analytics'

17   federal trade secret claims pursuant to 18 U.S.C. § 1836 *et seq.* and 28 U.S.C. §

18   1331.

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-7-

17.   This Court has subject matter jurisdiction over Weiss Analytics' Lanham Act claims pursuant to 15 U.S.C. § 1125(a) *et seq.* and 28 U.S.C. § 1331.

18.   The Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

19.   Defendants reside in this Judicial District and are residents of the State of California.  Moreover, a substantial part of the transaction, acts, and/or omissions giving rise to the claims alleged in this Complaint occurred in this Judicial District.  Venue therefore lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

20.   For purposes of Intra-District Assignment, on information and belief, all Defendants reside in the Southern Division pursuant to General Order No. 19-03-I.B.a.(1)(c).

**FACTUAL ALLEGATIONS**

21.   Weiss Analytics and Experian began discussions for a potential collaboration involving Weiss Analytics home value data and analytics with Experian consumer credit data in late summer 2018, and originally signed a mutual Proprietary Information Agreement ("PIA") effective September 26, 2018, to facilitate discussions of "a potential business relationship between the

Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-8-

1  parties."   The PIA limited Experian's use of Weiss Analytics' Proprietary

2  Information to "the purposes of evaluation [of] the Proposed Transaction[.]"

3      22.   Shortly thereafter, on October 2, 2018, Weiss Analytics and

4  Experian entered into the Data License and Services Agreement ("DLSA").

5      **A.   The DLSA Protects Weiss Analytics' Valuable Data and**

6      **Analytics and Does Not Allow Commercialization of any**

7      **Products Based on Weiss Analytics' Data**

8      23.   Under the DLSA at §1.1 ("Delivery") and §2.1 ("Services"), Weiss

9  Analytics agreed to provide Experian with certain "Data" and "Services" as

10  were set forth in Exhibit A of the DLSA.

11      24.   Exhibit A to the DLSA provided that "[t]he following products

12  ('Data') are covered and included in this Agreement" and listed certain Weiss

13  Analytics Price Indexes for "US single family homes and condominiums."

14      25.   Exhibit A to the DLSA provided that "[t]he following services

15  ('Services') are covered and included in this Agreement" and stated that "WA

16  shall assist Licensee in exploration and planning of potential operations and

17  product offerings in connection with, or derived from, the Data (the 'Purpose')

18  and analyzing, manipulating and processing the Data."

19      26.   Experian was not authorized to "(i) disclose, disseminate or publish

20  any portion of the Data in any manner; (ii) disclose, disseminate publish any

COMPLAINT

H-G Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

results created in part from the Data, by commingling, processing, modifying the Data or by using the Data to alter or produce other data; (iii) sublicense, resell, relicense or redistribute the Data in whole or in part; or (v) disassemble, decompile, or reverse engineer all or any portion of the Data."  DLSA §1.4.

27.    The DLSA further provided that "[Experian] shall not use the Data: (i) as a factor in establishing any individual's eligibility for credit or insurance; (ii) in evaluating any individual for employment purposes; (iii) in connection with a determination of any individual's eligibility for a license or other benefit granted by a governmental authority; (iv) in a way that would cause the Data to constitute a 'consumer report' under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; or (v) in any other manner that would knowingly cause such use of the Data to be construed as a consumer report by any authority having jurisdiction over any of the Parties."  DLSA § 1.4.

28.    Experian's license to the Data was "solely during the License Term (as defined herein) for its internal testing and product development purposes."  DLSA §1.2.  The "License Term" for the DLSA was originally "six (6) months" (DLSA §3.1), and the DLSA provided that "[u]pon the expiration or termination of this Agreement, all of the Confidential Information (including any copies) will be returned to the disclosing Party (or destroyed, at the recipient's

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-10-

1    discretion), and receiving Party will make no further use of such material."

2    (DLSA §8.3).

3        29.    Under the DLSA, "[Weiss Analytics] reserve[s] and shall retain

4    their entire right, title and interest in and to the Data, including all intellectual

5    property rights therein or relating thereto."  DLSA §1.3.

6        **B.     The 4th Amendment to the DLSA Continues to Protect Weiss**

7            **Analytics' Valuable Data and Analytics**

8        30.    During the pendency of the DLSA, Weiss Analytics and Experian

9    began to investigate potential product collaborations, including a CECL

10   mortgage solution and integration of home value data into the Experian

11   Sandbox.  In order to continue to have access to Weiss Analytics' data and

12   expertise, Experian successfully extended the DLSA Term on multiple

13   occasions.  But none of these amendments modified the terms described above

14   to grant Experian the right to launch any product, let alone a CECL mortgage

15   product or Sandbox mortgage integration.

16       31.    At Experian's urging, Weiss Analytics and Experian entered into a

17   4th Amendment to the DLSA on June 7, 2019.  The 4th Amendment retained

18   the material restrictions of the DLSA, and provided for temporary access to

19   Weiss Analytics' data and expertise while the parties finalized the terms of their

20   product collaborations, including the CECL mortgage solution.

32.     The 4th Amendment granted a third party – consultancy Oliver Wyman – only limited access under the DLSA, and only "for the purpose of developing but not delivering a mortgage CECL solution, using both Experian consumer credit data and WA Data[.]"  That permission was expressly granted based on the contemplated finalization with Experian of a "commercial agreement with terms governing use of WA's suite of CECL analytics in a mortgage CECL solution."  Although those terms were not yet finalized at the time of the 4th Amendment, contemporaneous draft agreements and numerous e-mails confirmed that the final terms would include a revenue and ownership split of the CECL mortgage solution.

**C.     Experian Disseminates Weiss Analytics' Data and Analytics Under False Pretenses**

33.     On information and belief, Experian's statements that it would not launch a CECL mortgage solution absent finalized "terms governing use of WA's suite of CECL analytics in a mortgage CECL solution" and its promises for a revenue and ownership split for the CECL mortgage solution were false when made, and were instead calculated to induce Weiss Analytics to allow a third party (Oliver Wyman) access to Weiss Analytics' data and analytics without the benefits promised to Weiss Analytics.

H-G Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-12-

34.     A 5th Amendment to the DLSA extended the Term for a final time, to July 31, 2019.

35.     During the period between the signing of the 4th Amendment and the expiration of the DLSA, Weiss provided extensive assistance to Experian and Oliver Wyman towards the development of the CECL mortgage solution and methodology for integrating mortgage data into Experian's credit analysis services, such as the Experian Sandbox.

36.     Operating in good faith under the 4th Amendment and in reliance on Experian's contractual obligations and contemporaneous assurances about revenue and ownership sharing, Weiss Analytics consulted extensively with Oliver Wyman and Experian in response to their questions about how to apply and integrate Weiss Analytics' data into Experian Sandbox generally, and specifically for the CECL mortgage solution development.  In response to Oliver Wyman and Experian requests, for their expressed purposes of increasing the number of properties covered in Experian Sandbox and speeding up and improving CECL mortgage development, Weiss Analytics also sent multiple Weiss Analytics' property data sets to Experian to be loaded into Experian Sandbox for access by Oliver Wyman.   These Weiss Analytics' data sets

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

1    consisted of tens of millions of property valuations and tens of millions of house

2    level historical price indexes.

3         37.    According to Experian and Oliver Wyman, the purpose of Oliver

4    Wyman's access to this data was to use the Weiss Analytics' indexes to adjust

5    the Weiss Analytics' property valuations back to the date of historical credit

6    events, in order to obtain millions of house level historical loan to value ratios

7    so they could develop and refine the CECL mortgage solution.

8         38.    While Weiss Analytics continued to provide this substantial

9    assistance, Weiss Analytics and Experian continued their discussions regarding

10   a finalized agreement.  The parties settled upon a structure where the parties

11   would enter into an initial "Commercial Agreement" to continue development

12   of the CECL mortgage solution and other products, but no such products could

13   be launched absent a final "Product Amendment."  For example, on July 11,

14   2019, Weiss Analytics and Experian had the following e-mail exchange

15   regarding the CECL mortgage solution:

16        **Weiss Analytics:** "Does Oliver Wyman understand they cannot launch

17        the CECL mortgage module until we have a signed Product Addendum

18        to the Commercial Agreement?"

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

**Experian:** "Yes, this is the understanding from all sides.  The 3 months' access to your data set is strictly for model development. . . . OW will be compensated out of Experian's cut."

39.     Weiss Analytics would not have allowed Oliver Wyman to access its data or consulted with Oliver Wyman to build a CECL mortgage solution without the promises made in the 4th Amendment, that the purpose was to develop a CECL mortgage solution, using both Experian's consumer data and Weiss Analytics' data, and without Experian's repeated statements in writing that under the eventual "terms governing use of WA's suite of CECL analytics in a mortgage CECL solution" Experian would share with Weiss Analytics the revenues and ownership of the CECL mortgage solution.

40.     In July 2019, at the same time that Experian was making the above commitments to Weiss Analytics, Experian promoted Susan Allen to Head of Product.   On information and belief, even before the execution of the Commercial Agreement, Ms. Allen and other Experian employees put into motion a plan to exclude Weiss Analytics from its revenue and ownership shares for the CECL mortgage solution, Experian Sandbox and other products ideas and developments under development by Weiss Analytics and Experian.

COMPLAINT

Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

**D.   Weiss Analytics and Experian Execute the Commercial Agreement without a Product Amendment – Experian Has No Right to Develop or Commercialize Without an Agreed Product Amendment**

41.   As of July 31, 2019, when Weiss Analytics and Experian signed the Commercial Agreement ("Comm. Ag."), many aspects of the CECL mortgage solution were still in development and the parties had not finalized terms for the CECL mortgage solution.   Accordingly, the Commercial Agreement provides for future Product Amendments to allocate revenue and ownership for products such as the CECL mortgage solution.   Comm. Ag. §§ 1.2, 6.6(c).  The parties explicitly acknowledged that "New Solutions" would be developed through this process: "The term 'New Solutions' refers to any new data, products, services, applications, analytics, tools, or Intellectual Property, as well as any associated output or by-products generated as a result of or created under this Agreement."   Comm. Ag. § 6.6(b)(i).   The term "Intellectual Property" is broadly defined as "any idea, concept, design, technique, tool, invention, discovery, or improvement, whether or not patentable, including those which a Party first conceives or reduces to practice during the term and in performance of this Agreement . . . ."  Comm. Ag. § 6.1

H·G Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-16-

42.     The Commercial Agreement states that ownership rights and revenue for New Solutions "will be formalized in a Product Amendment prior to launch of a New Solution."  Comm. Ag. §§ 1.2, 6.6(c).  The "Exclusivity" section of the Commercial Agreement prohibits Experian from pursuing the development and commercialization of any "product idea that relies on both credit data and WA Data Assets" unless Experian "first propose[s] to the other Party the Product Idea under terms commensurate with the contributions, royalties and development of such Product Idea . . . ."  Comm. Ag. §9.  Absent a signed Product Amendment, Experian is not permitted under any circumstances to "use [Weiss Analytics'] Intellectual Property in the development and commercialization of such product."  Comm. Ag. §9.

43.     The Commercial Agreement includes similar restrictions on Experian's use of Weiss Analytics' data as the DLSA, including that "Experian shall not disassemble, decompile, or reverse engineer all or any portion of the Weiss Data Assets" and prohibitions on the use of the Data Assets "(i) as a factor in establishing any individual's eligibility for credit or insurance; (ii) in evaluating any individual for employment purposes; (iii) in connection with a determination of any individual's eligibility for a license or other benefit granted by a governmental authority; (iv) in a way that would cause the Data to

H-G Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

constitute a 'consumer report' under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; or (v) in any other manner that would knowingly cause such use of the WA Data Assets to be construed as a consumer report by any authority having jurisdiction over any of the Parties."  Comm. Ag. Ex. A.

44.     Under the Commercial Agreement, Experian is required to "mak[e] available the Sandbox repository of depersonalized historical credit files, for use by Weiss Analytics[.]"  Comm. Ag. §2.3(a).

45.     The Commercial Agreement also requires Experian to pay Weiss Analytics a minimum monthly payment of $25,000 per month.  Comm. Ag. §2.1.3(b).

46.     The Commercial Agreement requires Experian and Weiss Analytics to prepare a press release and stipulates that "the publishing of the press release shall not be unreasonably delayed."  Comm. Ag. §2.5.

47.     The Commercial Agreement has an initial term of 1-year from the effective date, or until July 31, 2020.

**E.     Experian Breaches the Commercial Agreement and Makes Improper Use of Weiss Analytics' Data and Analytics**

48.     One week after signing the Commercial Agreement, Experian started breaching that agreement. On August 7th, it issued a press release stating that it "launched" a CECL solution with Oliver Wyman, with links to a PDF

COMPLAINT

HG Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

brochure describing a CECL mortgage solution, and a video of Experian and Oliver Wyman personnel demonstrating a CECL mortgage solution. These materials make no mentioned of Weiss Analytics.

49.     Throughout August and afterwards, while Experian continued to distribute these CECL mortgage materials without the knowledge or consent of WA, Experian continued to rely on WA data and consulting to develop its CECL mortgage solution and integrate WA's property data into a Sandbox.

50.     Throughout the fall of 2019, Experian touted its access to Weiss Analytics' data and analytics to relevant customers, for example, in a document distributed at the Mortgage Bankers Association in which Experian claimed access to "3rd Party" data having "unparalleled breadth, depth and accuracy" and cited to statistics that are unique to Weiss Analytics, namely, "20 Yrs+ Prop. Index Values," and "90M+ Properties".

51.     In fall of 2019, Experian trained its sales force to promote Experian's access to Weiss Analytics' data and analytics.  On information and belief, Experian sales representatives promoted Experian's access to Weiss Analytics' data and analytics to numerous financial institutions.

52.     Experian never made a good faith offer for a Product Amendment as required by the Commercial Agreement. When Experian finally submitted a

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-19-

1    proposed Product Amendment to Weiss Analytics for the CECL mortgage

2    solution, it bore no resemblance to the parties' prior conduct, contradicted the

3    express terms of the parties' agreements, and purported to extinguish vested

4    rights of Weiss Analytics.

5         53.    For example, despite all signed agreements being to the contrary,

6    the proposed Product Amendment falsely stated that "Weiss [Residential]

7    acknowledges and agrees that all Intellectual Property rights and ownership in

8    and to Version 1 [and to Ascend Sandbox] shall be the property of Experian and

9    Oliver Wyman, as agreed upon by such parties, and that Weiss Analytics has no

10   title, rights or interest to Version 1 [or Ascend Sandbox]."

11        54.    The proposed Product Amendment in fact admits that it was

12   contrary to the Commercial Agreement: "Notwithstanding anything to the

13   contrary in Section 6 (Intellectual Property) of the [Commercial] Agreement,

14   Experian and Oliver Wyman jointly own all Intellectual Property in and to

15   CECL Forecaster . . . ."

16        55.    Experian and Oliver Wyman relied on Weiss Analytics' expertise

17   and IP for the development (and eventual commercialization) of the CECL

18   mortgage solution.  In addition to Weiss Analytics' preexisting contributions to

19   the CECL mortgage solution, Weiss Analytics continued to provide its data and

Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-20-

consult with the same individuals at Experian and Oliver Wyman on the integration of property data into a CECL mortgage solution and Sandbox after the Commercial Agreement was signed.

56.     As confirmed by an extensive record of communications from Oliver Wyman and Experian to WA, Weiss Analytics' contributions are inextricably intertwined within the CECL mortgage solution and Sandbox integration such that it is not possible to avoid the use of Weiss Analytics' Intellectual Property in either product.

57.     After Weiss Analytics informed Experian that the proposed Product Amendment was not acceptable, and that Weiss Analytics would not allow its Intellectual Property and other rights to be rescinded, Experian initially claimed that it was not marketing a CECL mortgage solution despite public pronouncements to the contrary.

58.     Experian continued to mislead Weiss Analytics in additional ways for months, breached numerous additional terms of the parties' contractual agreements, and actively impeded Weiss Analytics' continued participation under the Commercial Agreement.  For example, Experian representatives falsely told Weiss Analytics in late September that "CECL development is on

HG Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-21-

1    hold" and that public communications to the contrary were "left in to gather

2    interest."

3        59.    Experian also removed the required Sandbox access for Weiss

4    Analytics under the Commercial Agreement.  According to Experian's Susan

5    Allen, this was done to limit Weiss Analytics' ability to contribute to New

6    Solutions under the Commercial Agreement.  Ms. Allen continuously interfered

7    with Weiss Analytics' work under the Commercial Agreement, including

8    cancelling numerous meetings, attempting to exclude Weiss Analytics from

9    product discussions, and pushing for the termination of the Commercial

10   Agreement.

11       60.    Experian has not terminated the Commercial Agreement.

12   Nonetheless, beginning in March 2020, Experian stopped making the $25,000

13   minimum payment to Weiss Analytics under the Agreement.  Experian only

14   resumed payments after Weiss Analytics raised the issues stated in this

15   Complaint to Experian's counsel.

16       61.    On information and belief, Experian and Oliver Wyman are

17   continuing to develop and commercialize the CECL mortgage solution, home

18   value Sandbox data integration, and other products that require an ownership

19   and revenue split under the parties' agreements.

H:G Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-22-

62.     On information and belief, Experian never retracted its statements at conferences or by its sales force, made to financial institutions and other potential customers of Weiss Analytics, that it was using Weiss Analytics home value data and analytics in those products.

## **FIRST CAUSE OF ACTION**

**Breach of the Data License and Services Agreement and Commercial Agreement**

63.     Weiss Analytics incorporates all of the above paragraphs as though fully set forth herein.

64.     The DLSA executed by Weiss Analytics and Experian constitutes a valid and enforceable written contract.

65.     The Commercial Agreement executed by Weiss Analytics and Experian constitutes a valid and enforceable written contract.

66.     Under the DLSA and Commercial Agreement, Experian is precluded, *inter alia*, from disclosing, disseminating or publishing the Weiss Analytics' data.  The 4th Amendment only permitted Experian to provide Oliver Wyman with access to the data for limited purposes and only under limited circumstances.  By providing the Data to Oliver Wyman for other purposes and outside of the limited circumstances permitted by the 4th Amendment, Experian has breached the DLSA.

H‑G Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-23-

67. Under the DLSA and Commercial Agreement, Experian is precluded, *inter alia*, from commingling, processing, or modifying the Data, using the Data to alter or produce other data, and from disassembling, decompiling, or reverse engineering all or any portion of the Data. On information and belief, Experian breached these provisions through its development and commercialization of the CECL mortgage solution and Sandbox integration based on the Data. On information and belief, Experian has also breached the DLSA and Commercial Agreement through its use of the data provided under these Agreements to develop and commercialize products for determining, *inter alia*, credit, insurance, and employment based on home value data.

68. Under the Commercial Agreement, Experian was prohibited from pursuing any development and commercialization of the CECL mortgage solution, home value data integration with Sandbox, and other product ideas under the parties' agreements without first proposing a Product Amendment to Weiss Analytics consistent with the Commercial Agreement. Experian has breached the Commercial Agreement by developing and commercializing these products without first making any such proposal.

Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

69.     Under the Commercial Agreement, because the parties have not agreed to any Product Amendments, Experian is prohibited from using any Weiss Analytics Intellectual Property in the development and commercialization of the CECL mortgage solution, home value data integration with Sandbox, and other product ideas under the parties' agreements. Because the CECL mortgage solution, home value data integration with Sandbox, and other product ideas are inextricably intertwined with Weiss Analytics Intellectual Property, Experian has breached the Commercial Agreement through its development and commercialization of these products.

70.     Experian has breached the Commercial Agreement by withholding Sandbox access and otherwise attempting to interfere with Weiss Analytics' performance of its obligations under the parties' agreements.

71.     Experian has breached the Commercial Agreement by unreasonably delaying the press release announcing the Experian and Weiss Analytics collaboration and by ultimately refusing to publish the parties' press release.

72.     As an actual and proximate result of Experian's breaches, Weiss Analytics has been irreparably injured and continues to face irreparable injury.

H·G Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

1    Weiss Analytics is threatened with losing the value of its confidential and

2    proprietary information, for which a remedy at law is inadequate.

3          73.    As an actual and proximate result of Experian's breaches, Weiss

4    has suffered actual and/or consequential damages in an amount to be proven at

5    the time of trial.

6          74.    Weiss Analytics also seeks injunctive relief for Experian's

7    breaches of the parties' Agreements, including the immediate cessation of all

8    development and commercialization of the above products such as the CECL

9    mortgage solution and home value data integration with Sandbox, the

10   immediate return and destruction of any such products or information related

11   to such products that Experian has provided to third parties such as Oliver

12   Wyman, and such other relief as is necessary to remedy Experian's egregious

13   past and ongoing wrongful use of Weiss Analytics' Confidential Information

14   and Intellectual Property.

15                    **SECOND CAUSE OF ACTION**

16        **Violation of Defense of Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.**

17        75.    Weiss Analytics incorporates all of the above paragraphs as

18   though fully set forth herein.

19        76.    Weiss Analytics owns and possesses certain confidential,

20   proprietary, and trade secret information, as alleged above.  For example,

HG Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

1    Weiss Analytics owns and possess residential property price indexes with

2    monthly time-series historical data running back over twenty years, house-

3    specific price indexes for United States homes and condominiums, metro-level

4    price indexes for houses and condominiums in hundreds of metropolitan areas,

5    and state and national price indexes.  Weiss Analytics has the know-how,

6    technology, software and systems to generate and update 90 million house-

7    specific indexes, valuations, and forecasts, based on its 20 years of monthly

8    house-specific indexes.  Weiss Analytics also owns and possesses

9    methodologies for determining forward-looking home values at various levels

10   of aggregation.  Weiss Analytics also owns and possesses analytics and

11   procedures for associating such house and mortgage data with other consumer

12   credit information.  Weiss Analytics also owns and possesses proprietary

13   methods for removing erroneous data, correcting addresses, estimating loan-to-

14   value ratios, distinguishing between first and second mortgages, running and

15   processing this enormous set of analytics on a regular basis, and procedures for

16   performing quality checks on this data while working with inherently error

17   prone public record data.

18        77.    Weiss Analytics' confidential, proprietary, and trade secret

19   information relates to products and services used, sold, shipped and/or ordered

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-27-

in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.  Weiss Analytics' trade secret information is used by financial and other institutions throughout the country to engage in interstate commerce and transactions related to home values and mortgages.

78.    Weiss Analytics has taken reasonable measures to keep such information secret and confidential.  Weiss Analytics only provides its trade secret information to third parties under strict non-disclosure terms such as those required of Experian, and utilizes protective electronic means and security measures to prevent unauthorized third party access.  All data is professionally managed at data centers that are under 24-hour guard.  Security measures include full digital video surveillance, with badge and biometric access.  Robust network security also protects Weiss Analytics' data – such measures including access control lists, log monitoring, and a managed firewall (among other measures).  Every client is serviced by a dedicated VLAN with dedicated firewalls.  Access to client networks are through an isolated encrypted VPN connection.

79.    Due to these security measures, Weiss Analytics' confidential and proprietary trade secret information is not available for others in the mortgage analytics or credit rating industries – or any other industries – to use through

H G  Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-28-

1    any legitimate means unless provided directly by Weiss Analytics under

2    restrictive agreements such as those entered into with Experian.

3         80.    Weiss Analytics' confidential, proprietary, and trade secret

4    information derives independent economic value from not being generally

5    known to, and not being readily ascertainable through proper means by,

6    another person who could obtain economic value from the disclosure or use of

7    the information.

8         81.    In violation of Weiss Analytics' rights, Experian misappropriated

9    Weiss Analytics' confidential, proprietary and trade secret information in the

10   improper and unlawful manner as alleged herein.  Experian's misappropriation

11   of Weiss Analytics' confidential, proprietary, and trade secret information was

12   intentional, knowing, willful, malicious, fraudulent, and oppressive.  On

13   information and belief, Experian has attempted and continues to attempt to

14   conceal its misappropriation.

15        82.    On information and belief, if Experian is not enjoined, Experian

16   will continue to misappropriate and use Weiss Analytics' trade secret

17   information for its own benefit and to Weiss Analytics' detriment.

18        83.    As the direct and proximate result of Experian's conduct, Weiss

19   Analytics has suffered severe competitive harm and will continue to suffer

Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-29-

1   such harm, irreparable injury, and significant damages, in an amount to be

2   proven at trial.  Because Weiss Analytics' remedy at law is inadequate, Weiss

3   Analytics seeks, in addition to damages, temporary, preliminary, and

4   permanent injunctive relief to recover and protect its confidential, proprietary,

5   and trade secret information and to protect other legitimate business interests.

6   Weiss Analytics' business operates in a competitive market and will continue

7   suffering irreparable harm absent injunctive relief.

8       84.    Weiss Analytics has been damaged by all of the foregoing and is

9   entitled to an award of exemplary damages and attorney's fees.

10              **THIRD CAUSE OF ACTION**

11      **Violation of California UTSA, Cal. Civ. Code § 3426 *et seq.***

12      85.    Weiss Analytics incorporates all of the above paragraphs as

13   though fully set forth herein.

14      86.    Weiss Analytics' residential property indexes, predictive

15   analytics, and data analysis and aggregation as described herein constitute

16   trade secrets as defined by California's Uniform Trade Secrets Act.  For

17   example, Weiss Analytics produces and owns house-specific price indexes,

18   that are monthly historical time-series running back over twenty years.  In

19   addition to these house-specific price indexes for United States homes, Weiss

20   Analytics produces, condominium indexes, metro-level price indexes for

H-G Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-30-

houses and condominiums in hundreds of metropolitan areas, and state and national price indexes. Weiss Analytics has the know-how, technology, software and systems to generate and update 90 million house-specific indexes, valuations, and forecasts based on a raw database of over 300 million property records. Weiss Analytics also owns and possesses methodologies for determining forward-looking price forecasts at various levels of aggregation. Weiss Analytics also owns and possesses procedures for associating such house and mortgage data with consumer information. Weiss Analytics also owns and possesses proprietary methods for removing erroneous data, correcting addresses, estimating loan-to-value ratios, distinguishing between first and second mortgages, running and processing this enormous set of analytics on a regular basis, and procedures for performing quality checks on this data while working with inherently error prone public record data.

87. Weiss Analytics has taken reasonable measures to keep such information secret and confidential. Weiss Analytics only provides its trade secret information to third parties under strict non-disclosure terms such as those required of Experian, and utilizes protective electronic means and security measures to prevent unauthorized third party access. Data is professionally managed at data centers that are under 24-hour guard. Security

HG Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-31-

1    measures include full digital video surveillance, with badge and biometric

2    access.  Robust network security also protects Weiss Analytics' data – such

3    measures including access control lists, log monitoring, and a managed

4    firewall (among other measures).  Every client is serviced by a dedicated

5    VLAN with dedicated firewalls.  Access to client networks are through an

6    isolated encrypted VPN connection.

7        88.    Experian knew or should have known under the circumstances

8    that the information misappropriated by Experian were trade secrets.

9        89.    Experian misappropriated and threatens to further misappropriate

10   trade secrets at least by acquiring and disseminating trade secrets with

11   knowledge of or reason to know that the trade secrets were acquired by

12   improper means, and Experian is using and threatening to use the trade secrets

13   acquired by improper means in commercial product offerings.

14       90.    As a direct and proximate result of Experian's conduct, Weiss

15   Analytics is threatened with injury and has been injured in an amount that will

16   be proven at trial.  Weiss Analytics has also incurred, and will continue to

17   incur, additional damages, costs and expenses, including attorney's fees, as a

18   result of Experian's misappropriation. As a further proximate result of the

HG Haley ▪ Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

-32-

COMPLAINT

1   misappropriation and use of Weiss Analytics' trade secrets, Experian was

2   unjustly enriched.

3       91.     The aforementioned acts of Experian were willful, malicious and

4   fraudulent.  Weiss Analytics is therefore entitled to exemplary damages under

5   California Civil Code § 3426.3(c).

6       92.     Experian's conduct constitutes transgressions of a continuing

7   nature for which Weiss Analytics has no adequate remedy at law.  Unless and

8   until enjoined and restrained by order of this Court, Experian will continue to

9   retain and use Weiss Analytics' trade secret information to enrich itself and

10  divert business from Weiss Analytics.  Pursuant to California Civil Code §

11  3426.2, Weiss Analytics is entitled to an injunction against the

12  misappropriation and continued threatened misappropriation of trade secrets as

13  alleged herein and further asks the Court to restrain Experian from using all

14  trade secret information misappropriated from Weiss Analytics and to return

15  all trade secret information to Weiss Analytics.

16      93.     Pursuant to California Civil Code § 3426.4 and related law, Weiss

17  Analytics is entitled to an award of attorneys' fees for Experian's

18  misappropriation of trade secrets.

H G Haley ● Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT
-33-

**FOURTH CAUSE OF ACTION**

**Unfair Competition under the Lanham Act, 15. U.S.C. § 1125(a)**

94.    Weiss Analytics incorporates all of the above paragraphs as though fully set forth herein.

95.    Experian made false and misleading statements, including but not limited to communications at trade shows, in-person and telephonic communications, and promotional materials that were provided to relevant customers in the financial services industry, regarding Experian's partnership with and ongoing use of Weiss Analytics' data and analytics in Experian products.   Those statements were literally false and/or misleading commercial speech in violation of the Lanham Act, 15 U.S.C. § 1125(a).

96.    Experian's false and misleading statements were made in interstate commerce, and in the context of commercial advertising or promotion, as Experian made these statements to solicit business from relevant customers in the financial services industry, as well as to harm Weiss Analytics' ability to independently provide similar services to these customers or Experian's competitors.

97.    Experian  made its false and misleading statements knowingly, willfully, and/or recklessly to companies in the financial services industry.

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-34-

98.     Experian's false and misleading statements likely have, and if allowed to continue, will likely continue to deceive financial services providers.

99.     Experian's false and misleading statements are material and will affect the purchasing and investment decisions of financial services providers.

100.    Experian's false and misleading statements have and are likely to cause substantial harm to Weiss Analytics in the marketplace, including lost business and loss of goodwill and reputation.

101.    Experian's conduct constitutes false and misleading descriptions or representations about its own goods and services and a potential competitor's goods and services under the Lanham Act, 15 U.S.C. § 1125(a). Weiss Analytics is entitled to all relief available for such false and misleading statements, including but not limited to injunctive relief, disgorgement of Experian's ill-gotten profits, recovery of Weiss Analytics' damages, attorneys' fees, the costs of this action, and treble damages under the Lanham Act, 15 U.S.C. § 1117(a).

## FIFTH CAUSE OF ACTION
### Violation of California Bus. & Prof. Code § 17200

102.    Weiss Analytics incorporates all of the above paragraphs as though fully set forth herein.

H:G Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

1       103.   Experian engaged in unlawful, unfair, and fraudulent business

2    acts and practices. Such acts and practices include, but are not limited to,

3    misappropriating Weiss Analytics' confidential and proprietary information

4    and engaging in false advertising regarding Experian's use of Weiss Analytics'

5    data.

6       104.   Experian's business acts and practices were unlawful as described

7    above.

8       105.   Experian's business acts and practices were fraudulent in that a

9    reasonable person would likely be deceived by their material

10    misrepresentations and omissions.  Experian has acquired and used Weiss

11    Analytics' confidential and proprietary trade secret information through

12    material misrepresentations and omissions, and has misrepresented the nature

13    of its products and use of Weiss Analytics' data and analytics to relevant

14    customers in the financial services industry.

15       106.   Experian's business acts and practices were unfair in that the

16    substantial harm suffered by Weiss Analytics outweighs any justification that

17    Experian may have for engaging in those acts and practices.

18       107.   Weiss Analytics has been harmed as a result of Experian's

19    unlawful, unfair, and fraudulent business acts and practices. Weiss Analytics is

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-36-

entitled to (a) recover restitution, including without limitation, all benefits that Experian received as a result of their unlawful, unfair, and fraudulent business acts and practices and (b) an injunction restraining Experian from engaging in further acts of unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Weiss Analytics respectfully requests the following relief:

a.  Judgment in Weiss Analytics' favor and against Experian on all causes of action alleged herein;

b.  For damages in an amount to be further proven at trial;

c.  For preliminary and permanent injunctive relief;

d.  For judgment that this is an exceptional case;

e.  For punitive damages;

f.  For restitution;

g.  For costs of suit incurred herein;

h.  For pre-judgment and post-judgment interest;

i.  For attorneys' fees and costs; and

j.  For such other and further relief as the Court may deem to be just and proper.

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

-37-

COMPLAINT

1

2

## **DEMAND FOR JURY TRIAL**

3       Weiss Analytics hereby demands trial by jury for all causes of action,

4    claims, or issues in this action that are triable as a matter of a right to a jury.

5

6    DATED: May 6, 2020                    **HALEY GUILIANO LLP**

7                                          By: */s/ Joshua V. Van Hoven*_____
                                           JOSHUA V. VAN HOVEN
8                                          joshua.vanhoven@hglaw.com
                                           WILLIAM J. ULRICH
9                                          william.ulrich@hglaw.com
10                                         111 N. Market Street, Suite 900
11                                         San Jose, California 95113
12                                         Telephone: 669.213.1050
13                                         Facsimile: 669.500.7375
14
15                                         *Attorneys for Plaintiff*
16                                         Weiss Residential Research, LLC
17
18
19
20
21

Haley • Guiliano
111 N. Market St.
Suite 900
San Jose, CA 95113
United States of America

COMPLAINT

-38-