UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEISS RESIDENTIAL RESEARCH LLC,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>Defendants. | Case No. 8:20-cv-00861-MCS-DFM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT [23]** |

Defendants Experian Information Solutions, Inc., and Experian Services Corp. (together, "Experian") move to dismiss Plaintiff Weiss Residential Research LLC's First Amended Complaint ("FAC," ECF No. 20). ("Mot.," ECF No. 23-1.) Weiss filed an opposition, ("Opp'n," ECF No. 32), and Experian filed a reply, ("Reply," ECF No. 34). The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. The Court takes off calendar the hearing set for October 19, 2020. For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Experian is a major credit bureau that collects, aggregates, and analyzes personal and credit account data. (FAC ¶ 3.) Weiss is the premier single-family residence data analytics firm. (*Id.* ¶ 4.) On October 3, 2018, Weiss and Experian entered a Data License and Services Agreement. ("DLSA," ECF No. 23-3.)[1] As relevant to this motion, Weiss agreed to provide Experian with certain data and services, including Weiss's price indexes for U.S. single-family homes and condominiums. (FAC ¶¶ 25–28; DLSA Ex. A §§ 1–2.) Experian agreed to restrictions on using Weiss data, and Weiss retained its rights in its data. (FAC ¶¶ 29–30, 32; DLSA §§ 1.3–.4.)

In 2019, Weiss and Experian began to investigate potential product collaborations, including development of a product using Weiss's home value data and analytics to facilitate compliance with the Current Expected Credit Losses ("CECL") risk management standard with respect to mortgages. (FAC ¶¶ 33–34; *see id.* ¶¶ 2–3 (explaining CECL).) Meanwhile, Experian and nonparty Oliver Wyman were working on non-mortgage CECL compliance solutions, and Oliver Wyman wanted access to Weiss data. (*Id.* ¶¶ 35–36.) Weiss hesitated to give access to Oliver Wyman without a commercial agreement outlining the revenue and ownership split of a contemplated CECL solution. (*Id.* ¶ 39.) Experian represented to Weiss that they would enter such an agreement. (*See id.* ¶¶ 39–40.) Weiss avers that Experian made statements that it would not launch a CECL mortgage solution before finalizing a commercial agreement, and that Experian would share revenue and ownership of the CECL mortgage solution with Weiss, and that those statements were false when made. (*Id.* ¶¶ 45, 53.)

---

[1] On a motion to dismiss, courts may consider evidence on which the complaint "necessarily relies" if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court deems incorporated by reference into the FAC the documents lodged with Defendant's motion and cited in this Order.

2

In an amendment to the DLSA, ("Amendment No. 4," ECF No. 23-5), the parties agreed to allow Experian to give Oliver Wyman access to Weiss data "for the purpose of developing but not delivering a mortgage CECL solution, using both Experian consumer credit data and [Weiss] Data." (FAC ¶ 42; Amendment No. 4.) The parties expressed that this permission was "provided in contemplation of finalizing the commercial agreement." (Amendment No. 4.) Weiss continued working with Oliver Wyman and Experian on development of the CECL mortgage solution. (*See* FAC ¶¶ 47–49.)

On July 31, 2019, Weiss and Experian entered the Commercial Agreement. ("CA," ECF No. 23-7.) As relevant to the motion, Weiss agreed to continue licensing its data to Experian. (CA § 2.1.1.) Experian agreed to give Weiss access to its Sandbox platform for use in the parties' collaboration. (*Id.* Ex. C § 2.) The parties agreed that ownership rights and revenue splits for any products, applications, or tools developed through the continued relationship of the parties would be set forth in "Product Amendment[s]" to the CA. (FAC ¶¶ 55–56; CA § 1.2.) Absent a Product Amendment, each party was precluded from using the other party's intellectual property in the development and commercialization of a product borne from the parties' collaboration. (*See* CA § 9.) The parties also contemplated drafting a press release announcing the collaboration. (*Id.* § 2.5.)

Shortly after execution of the CA, the relationship between the parties deteriorated. Experian began promoting its CECL solution, including the mortgage component that used Weiss data, without Weiss's consent or knowledge. (*See* FAC ¶¶ 65–68.) Weiss was unsatisfied with a Product Amendment Experian proposed. (*Id.* ¶¶ 69–71, 74.) Weiss agreed to a different Product Amendment, but later rejected it after Experian substantially revised it. (*Id.* ¶¶ 77–82.) Experian suspended and then removed Weiss's access to Experian's Sandbox platform. (*Id.* ¶¶ 82, 87.) Weiss avers that Experian is continuing to develop and commercialize a CECL mortgage solution using Weiss's intellectual property. (*Id.* ¶¶ 90–93.)

Weiss asserts seven claims: (1) breach of the DLSA and CA; (2) fraudulent inducement as to Amendment No. 4 and CA; (3) negligent misrepresentation as to Amendment No. 4 and CA; (4) violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (5) violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*; (6) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (*Id.* ¶¶ 94–149.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. DISCUSSION

### A. Breach of Contract Claim (Claim 1)

Weiss alleges six separate theories of breach of contract. (FAC ¶¶ 97–102.) Experian argues that Weiss's theories are inconsistent with the terms of the parties' contracts or fail to state a claim. (Mot. 10.) The DLSA is governed by New York law, (DLSA § 10.5), and the CA is governed by California law, (CA § 17.1). The elements are substantially the same under both states' law: a plaintiff must plead "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *accord FT Travel - N.Y., LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1074 (C.D. Cal. 2015) (setting forth elements under New York law). The Court evaluates each of Weiss's theories in turn.

First, Weiss claims Experian breached the DLSA as amended by providing Weiss data to Oliver Wyman for purposes outside the limited circumstances permitted by Amendment No. 4. (FAC ¶ 97.) Experian's motion does not challenge the adequacy of this theory, (*see* Mot. 11–18), so the Court assumes it is adequately pleaded.

Second, Weiss asserts Experian breached the DLSA and CA's restrictions on use of Weiss data through developing and commercializing the CECL mortgage solution and integrating the data into Sandbox. (FAC ¶ 98.) Experian argues Weiss fails to plead facts supporting the theory. (Mot. 11–13.) In response, Weiss provides facts and argument pertaining to unpleaded theories of breach of sections of the CA different from the one supporting its theory in the FAC. (Opp'n 8–9 (citing CA §§ 1.2, 6.1, 6.6, 9); *see* FAC ¶ 98 (restating provision governing use restrictions, CA Ex. A § 1.4).) Weiss fails to explain in the FAC or its brief how Experian violated the restrictions on use of its data, as claimed. This theory is insufficiently pleaded.

Under Weiss's third and fourth theories, it claims Experian breached the CA by developing and commercializing products without first proposing a Product Amendment, (FAC ¶ 99), and by developing and commercializing such products using

Weiss's intellectual property, (*id.* ¶ 100). Experian presents three lines of argument: first, it contends these theories fail at least in part because the CA expressly contemplates development of a CECL mortgage solution using Weiss data. (Mot. 13–14.) Weiss does not address this aspect of its theories, (*see* Opp'n 12 (contending only that Experian's commercialization—not development—of the CECL product breached the CA)), so the Court deems this argument conceded. *See, e.g.*, *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where party "failed to develop any argument"); *City of Arcadia v. EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) ("[T]he implication of this lack of response is that any opposition to this argument is waived."). Second, Experian argues that the FAC lacks factual allegations concerning Experian's sale of a CECL mortgage model. (Mot. 14.) As Weiss identifies, the FAC provides facts supporting a theory that Experian engaged in marketing activities concerning the CECL product. (Opp'n 9–10 (citing, *inter alia*, FAC ¶¶ 65, 84, 92).) Weiss need not plead sale, as Experian would require, (Mot. 14), to allege improper "commercialization," a term the CA leaves undefined. Finally, Experian argues that it was permitted to develop and commercialize a CECL mortgage solution under the CA because it fulfilled its obligations under CA § 9 and has not commercialized a product with Weiss's intellectual property. (Mot. 14–16.) But Weiss pleads facts indicating that Experian's proposed Product Amendments did not provide commensurate terms as required by CA § 9, (*see* FAC ¶¶ 69–71, 81; *see also* Opp'n 11 (describing "sham" amendment proposals)), and that the products Experian commercialized are inextricably intertwined with Weiss's intellectual property, (FAC ¶¶ 49, 66, 73). These theories survive to the extent Weiss claims Experian improperly commercialized products using its intellectual property without first proposing a Product Amendment with commensurate terms.

Fifth, Weiss claims Experian breached the CA by withholding access to Experian's Sandbox platform. (FAC ¶ 101.) Experian argues the fifth theory lacks merit because the term granting Weiss access to Sandbox forecloses its claim. (Mot. 16–17.)

The CA requires Experian to provide Weiss with access to Sandbox, and Weiss agreed to use Sandbox for specific purposes. (CA Ex. C § 2.) The parties' agreement that Weiss use the platform only for specific purposes neither expressly nor implicitly vests Experian with the discretion to terminate access upon its unilateral determination that such purposes no longer existed. The contract term does not preclude Weiss's theory of breach, so this component of the claim survives.

Sixth, Weiss argues that Experian breached the CA by unreasonably delaying and ultimately refusing to issue a contemplated press release. (FAC ¶ 102.) The CA requires the parties to draft a press release announcing the Experian-Weiss collaboration, and obliges Experian to notify Weiss by email if Experian foresaw a delay in meeting the prospective publication date. (CA § 2.5.) Though this section sets a goal for publication, it does not expressly oblige either party to publish the press release. The Court agrees with Experian that Weiss does not plead any facts showing that Experian failed to meet its obligations under this section. (Mot. 17–18.)

For the foregoing reasons, several theories of breach are insufficiently pleaded, and the claim must be dismissed in part.

### B.  Fraud-Based Claims (Claims 2–3)

Experian asserts that Weiss's claims of fraudulent inducement and negligent misrepresentation are superseded by CUTSA. (Mot. 18–19.) CUTSA forbids the use of "misrepresentation" "to acquire knowledge of [a] trade secret." Cal. Civ. Code § 3426.1(a), (b)(2)(A). CUTSA supersedes claims based on the same nucleus of facts as trade secret misappropriation. *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1205 (N.D. Cal. 2020); *see also* Cal. Civ. Code § 3426.7(b). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Id.* (quoting *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017)).

Weiss claims Experian induced it to enter the CA and Amendment No. 4 to the DLSA by falsely promising that commercialization of the contemplated CECL products would not occur without an ownership and revenue agreement. (FAC ¶¶ 106–08, 112–14.) Weiss alleges Experian made these promises intending to induce Weiss to provide data, analytics, assistance, and ideas to Experian and Oliver Wyman. (*Id.* ¶¶ 108, 114.) In its CUTSA claim, Weiss alleges Experian misappropriated its proprietary data and analytics by making such misrepresentations. (*Id.* ¶¶ 128, 133.) Though the object of the purported fraud encompasses more than the trade secrets claimed, CUTSA operates to supersede "claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011); *see also Snapkeys*, 442 F. Supp. 3d at 1205 (collecting cases finding fraud claims superseded "where a defendant is alleged to have made misrepresentations to induce the plaintiff to offer not just confidential information, but even labor and insight that led to confidential information" (internal quotation marks omitted)); *SHK Mgmt., Inc. v. Kilroy Realty Corp.*, No. CV 14-02509 DMG (Ex), 2014 WL 12561096, at *4 (C.D. Cal. Oct. 2, 2014) (finding fraudulent inducement claim preempted where "[t]he alleged purpose of the inducement was to gain access to the trade secrets"). Stripped of facts supporting the CUTSA claim, the FAC does not set forth facts that may be reassembled to support fraud-based claims.

Because CUTSA supersession is dispositive, the Court does not reach Experian's alternative arguments. The fraud-based claims are dismissed.

### C. Trade Secret Misappropriation Claims (Claims 4–5)

Experian challenges Weiss's trade secret misappropriation claims on the basis that they fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (Mot. 22–23.) Weiss does not dispute Experian's contention that Rule 9(b) applies to its trade secret claims given its allegations that Experian misappropriated its trade secrets by misrepresentation. (*See* Opp'n 18–19; *see also* FAC ¶¶ 123, 133.)

To state a claim for trade secret misappropriation under the DTSA or the CUTSA, a plaintiff must allege: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (internal quotation marks omitted). Although fraud is not an essential element of a trade secret claim, averments of fraudulent conduct are subject to the heightened pleading standard of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). To meet Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

The misrepresentations Weiss alleges Experian made lack sufficient context to provide adequate notice of the particular misconduct. For example, Weiss details several representations Experian representatives made without identifying the person or persons to whom the representation was made. (*E.g.*, FAC ¶ 51 (recounting a response by Ryan Rosales of Experian to a question by an unidentified representative of "Weiss Analytics"). *See UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015) (requiring pleading "the identities of the parties to the misrepresentations" (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007))). Some representations supporting these claims that Weiss identifies in its brief, such as Anshul Verma's May 22, 2019, email asking when Oliver Wyman would have access to Weiss data, (FAC ¶ 36), and Ryan Rosales's June 5, 2019, communication providing status on a draft of the CA, (*id.* ¶ 39), lack attendant allegations explaining what is false or misleading about them. As pleaded, Weiss does not state with particularity any false statement that Experian "would not launch products without a revenue and ownership agreement," or misrepresentation concerning Experian's "product development and commercialization efforts." (*Id.* ¶¶ 123, 133.)

9

The Court declines to dismiss the claims on the other grounds Experian presents. The trade secret claims are dismissed.

### D. Lanham Act Claim (Claim 6)

The elements of a false advertising claim under the Lanham Act are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997)). False advertising claims that sound in fraud are subject to the heightened pleading standard of Rule 9(b). *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017).

Experian challenges the Lanham Act claim on the basis that Weiss fails to identify any false statement in a commercial advertisement. (Mot. 24–25.) Weiss identifies two sets of statements supporting this claim. (Opp'n 21–22.) First, at a convention, Experian distributed a document stating Experian had access to third party data with "unparalleled breadth, depth and accuracy," and a director of Experian touted that Experian's Sandbox platform contained Weiss data. (FAC ¶ 67.) Second, "Experian trained its sales force to promote Experian's access to Weiss Analytics' data and analytics." (*Id.* ¶ 68.) Weiss does not articulate facts showing these statements were false. In fact, other allegations suggest they are true. (*See, e.g.*, *id.* ¶ 66 (alleging Weiss data was integrated into Sandbox); *id.* ¶ 67 (noting the statistics given at the convention

"are precisely the numbers that Weiss Analytics furnished to Experian to describe its data").) Weiss's conclusion that Experian made false statements concerning Experian's "partnership with and ongoing use of Weiss Analytics' data and analytics in Experian products" is not supported by any pleaded facts, let alone facts alleged with the particularity required by Rule 9(b). (*Id.* ¶ 137.) The claim is dismissed.

### E. UCL Claim (Claim 7)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Experian argues that the UCL claim fails for the same reasons Weiss's other claims fail. (Mot. 25.) Experian notes that the UCL claim is "not clearly pled." (*Id.*) In its brief, Weiss clarifies that its claim is supported by its allegations of fraudulent conduct and false commercial statements. (Opp'n 22.) The Court treats this as an admission that Weiss predicates its UCL claim solely in the asserted fraudulent conduct and false advertising supporting its fraud and Lanham Act claims. The UCL claim must be dismissed for the reasons stated for the dismissal of the fraud and Lanham Act claims.

## IV. CONCLUSION

The motion is **GRANTED IN PART AND DENIED IN PART**. Parts of the first claim for breach of contract are dismissed. The second claim for fraudulent inducement, third claim for negligent misrepresentation, fourth claim for violation of the DTSA, fifth claim for violation of the CUTSA, sixth claim for violation of the Lanham Act, and seventh claim for violation of the UCL claim are dismissed in their entirety. The motion is denied in all other respects.

Many of the pleading deficiencies identified in this Order appear to be curable. However, the Court notes that amending the complaint to assert state law claims arising from the same nucleus of facts as the CUTSA claim would be futile because such claims are superseded. Nevertheless, out of an abundance of caution, and given the Ninth Circuit policy of granting leave to amend with "extreme liberality," *Hoang v. Bank of*

*Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (internal quotation marks omitted), the Court gives Weiss leave to amend.

Weiss may file an amended complaint no later than November 2, 2020, if it can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order. Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion.

The Court reminds the parties of their obligation to discuss thoroughly the substance of a contemplated motion before the filing of the motion. C.D. Cal. L.R. 7-3. The Court is confident that several of the issues presented in this motion could have been resolved by a good faith conference of counsel. Unnecessary motion practice will not be tolerated in this or any action.

**IT IS SO ORDERED.**

Dated: October 15, 2020

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE